UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF SACRAMENTO,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & CO., and WELLS FARGO BANK, N.A.,<br><br>Defendants. | No. 2:18-cv-00416-KJM-AC<br><br><br><br>ORDER |

Defendants Wells Fargo & Co. and Wells Fargo Bank N.A. ("collectively "Wells Fargo") move to phase discovery. Mot., ECF No. 52. The City of Sacramento opposes. Opp'n, ECF No. 56. Wells Fargo has replied. Reply, ECF No. 58. The court heard oral argument from the parties on March 6, 2020. At the hearing, Robert Peck and Yosef Peretz appeared for the City of Sacramento; Olivia Kelman, Paul Hancock and Edward Sangster appeared for Wells Fargo. The novel coronavirus pandemic has intervened since hearing, but the court now resolves the motion and DENIES it as explained below.

I.  BACKGROUND

Plaintiff City of Sacramento ("City") sues Wells Fargo for violations of the federal Fair Housing Act (FHA) and California's Fair Employment and Housing Act (FEHA). Plaintiff alleges that since at least 2004, Wells Fargo maintained a pattern and practice of discriminatory

1

lending in Sacramento that constitutes redlining and reverse redlining.[1]  Compl., ECF No. 1, ¶¶ 9–11.  The City alleges Wells Fargo's conduct amounts to intentional discrimination and disparate impact discrimination and that both redlining and reverse redlining violate the FHA, 42 U.S.C. §§ 3601, et seq.  *Id.* ¶¶ 8, 11; *see* 42 U.S.C. §§ 3604(b), 3605(a).

The FHA has a two-year statute of limitations; claims must be brought "not later than 2 years after the occurrence or the termination of an allegedly discriminatory housing practice[.]"  42 U.S.C. § 3613(a)(1)(A).  The parties agree claims predicated on a "continuing violation," i.e., a discriminatory pattern, practice or policy consisting of multiple loans, are timely when at least one violation illustrative of the practice occurred within the limitations period.  Mot. at 4–5; Opp'n at 6; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982).

Wells Fargo moved to dismiss the City's FHA claim for failure to allege facts plausibly showing violations extending into the limitations period.  Mot. to Dismiss ("MTD"), ECF No. 16 at 19–20.  Plaintiff's complaint alleges Wells Fargo originated at least four discriminatory loans to minority borrowers in the limitations period.  Compl. ¶ 155.  The court previously denied defendants' motion as to the statute of limitations argument.  Order on MTD, ECF No. 36 at 22.

Now, Wells Fargo has moved to bifurcate discovery into two phases.  In Wells Fargo's proposed initial phase, discovery would be limited to facts relating to loans originating in the two-year limitations period, which is between February 23, 2016 and February 23, 2018.  Mot. at 4.  Fact discovery in the initial phase would close four months after the court issues an order phasing discovery and expert discovery would close approximately four months after the close of fact discovery.  Joint Status Report, ECF No. 50 at 10.  The parties would have a deadline to file summary judgment motions of eight months after the proposed phasing order issues.  *Id.*

/ / / / /

/ / / / /

---

[1] These terms are explained in more detail in the court's order on defendants' motion to dismiss, ECF No. 36.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, the scope of discovery must be

> relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The parties have a duty to state in their discovery plan "whether discovery should be conducted in phases or be limited to or focused on particular issues[.]" Fed. R. Civ. P. 26(f)(3)(B). At all times, the court's application of the rules in the administration of discovery matters should be guided by the aspirational mandate of Rule 1, "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

To that end, the district court has wide latitude in controlling discovery; its rulings will not be overturned unless they are an abuse of discretion. *State of Cal., on Behalf of Cal. Dept. of Toxic Substances Control v. Campbell,* 138 F.3d 772, 779 (9th Cir. 1998); *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). The power to issue discovery orders is part of the "power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) (citations omitted).

Parties requesting bifurcation of discovery have the burden of proving the bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties. *Matsushita Elec. Indus. Co., Ltd. v. CMC Magnetics Corp.*, No. C 06-04538 WHA, 2007 WL 219779, at *2 (N.D. Cal. Jan. 29, 2007) (citing *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992)). A court must limit the extent of discovery if "the burden or expense of the proposed discovery outweighs its likely benefit[.]" Fed. R. Civ. P. 26(b)(2)(C)(iii) (referencing Fed. R. Civ. P. 26(b)(1)). In so doing, the court "should consider the totality of the circumstances, weighing the value of the material sought against the burden of

providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *U.S. E.E.O.C. v. Caesars Ent., Inc.*, 237 F.R.D. 428, 431–32 (D. Nev. 2006) (citations omitted).

### III. DISCUSSION

It is axiomatic that claims must be timely under the applicable statute of limitations for those claims to proceed. A plaintiff must bring a claim under the FHA within two years of "the occurrence or termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). Where plaintiffs allege defendants engaged in a "continuing pattern, practice, and policy" causing a series of discriminatory acts, the claim is timely if at least one of the acts resulting from this "continuing violation" was within the limitations period. *Havens Realty Corp.*, 455 U.S. at 380–81. Plaintiffs "can meld untimely and timely acts into a single timely claim only if, at a minimum, the timely acts injure the same FHA–protected rights as the untimely acts." *Alpha III, Inc. v. City of San Diego*, 187 F. App'x 709, 710–11 (9th Cir. 2006).

Here, because the complaint alleges only four discriminatory loans originating during the limitations period, Wells Fargo proposes a first phase of limited discovery to determine whether the City can support the existence of these claims as anchoring its continuing violation theory. After this first phase, Wells Fargo proposes a cutoff for dispositive motions addressed to the limitations issue. The Wells Fargo defendants assert such an approach could lead to a "quick and efficient end" to the suit as in similar suits where phasing has been granted. Mot. at 6.

The City alleges both disparate treatment and disparate impact discrimination under the FHA. Compl. ¶ 8. To succeed on its disparate treatment claim, the City must establish Wells Fargo had a discriminatory intent or motive. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985–86 (1988)). By contrast, no discriminatory motive is necessary to prove a disparate impact claim; the City must show Wells Fargo's facially neutral practices caused a significantly adverse or disproportionate impact on persons of a particular class. *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 711 (9th Cir. 2009). The disparate impact analysis is subject to a burden-shifting test not relevant here. What is relevant is the disproportionately adverse impact, which is

generally proven by statistical analysis. *See Texas Dept. of Housing and Cmty. Affairs v. Inclusive Communities Proj., Inc.*, 576 U.S. 519, 543 (2015) ("A plaintiff who fails to . . . produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact.").

As a result, if the City ultimately must defend a motion for summary judgment on its disparate impact claim with access to information about only the small proportion of the underlying facts that would be allowed by Wells Fargo's proposed phasing plan, the City may not be able to muster sufficient evidence to show statistically significant causation. If the claim rests on Wells Fargo's conduct stretching back to 2004, the determination of whether there is such a statistical connection should rely on evidence back to that time. Although the court could, and likely should, defer ruling on a motion for summary judgment in such circumstances, it begs the question why the court would put a litigant in that position in the first place. *See* Fed. R. Civ. P. 56(d) (authority for court to defer ruling on motion for summary judgment where opposing party has had insufficient access to facts to oppose).

The case of *City of Los Angeles v. Wells Fargo*, No. 2:13-cv-09007-ODW(RZx), 2015 WL 4398858 (C.D. Cal. July 17, 2015), is instructive on this issue. In that case, the City of Los Angeles brought a "continuing violations" FHA claim and the parties stipulated to phased discovery as proposed here. *Id.* at *2. The evidence adduced at the limitations-phase motion for summary judgment showed a small disparity between twelve high-cost loans issued to minority borrowers and four issued to Caucasian borrowers in the limitations period, out of 4,260 loans total. *Id.* at *7. However, the City's expert conceded "'[b]ecause of the small number of owner-occupied High-Cost Loans in the data … these disparities are not statistically significant.'" *Id.* The court then granted summary judgment for failure to produce evidence of a "significantly adverse" disparity. *Id.* at *7 (citing *Budnick v. Town of Carefree*, 518 F.3d 1109, 1118 (9th Cir. 2008)). The Ninth Circuit upheld the district court's ruling on summary judgment, agreeing the City had failed to make out a "robust" causal connection. *City of Los Angeles v. Wells Fargo & Co.*, 691 F. App'x 453, 454 (9th Cir. 2017).

//////

While nothing indicates the result in *City of Los Angeles* was driven solely by the trial court's decision to limit discovery to two years prior to the limitations period, this court declines in its discretion to endorse a similar approach. The certainty of the result in that case, was, in this court's view, undermined by the City's expert's conclusion that the sample size was too small to make the disparity between minority and white borrowers statistically significant. In a claim predicated on statistical analysis, the reliability of any analytical conclusion, whether showing a significant disparity or not, is dependent on the data on which it rests.

A disparate impact continuing violation claim is a single claim. To prove one, plaintiffs must show a statistically significant disparate impact. As the city correctly points out, showing a statistical disparity "requires a sufficiently large sample of loans" to avoid evaluating the claim on "a statistically insignificant single or limited set of instances." Opp'n at 6. An analysis of the whole dataset is necessary to determine whether the loans originated during the limitations period are a product of a policy causing a statistically significant disparity. To restrict the City's analysis over its objection now would be akin to asking the City to sketch an elephant viewed through a keyhole, regardless of the elephant's precise defining features.

Moreover, it is not clear a phasing order would save judicial resources. As another district court noted in a different kind of case, "drawing the line between one discovery 'phase' and another is necessarily imprecise, and invites additional discovery disputes." *CRS, LLC v. Valve Corp.*, No. C08-0361, 2008 WL 11343649, at *1 (W.D. Wash. Aug. 1, 2008) (denying proposal to phase liability and damages discovery in patent case). This court is similarly "reluctant to encourage the parties to expend resources arguing over whether the discovery one party seeks belongs in one phase of discovery rather than another." *Id.* Even in situations in which phasing is common, such as class actions, line-drawing may remain a challenge, and it can be most efficient to allow some overlap between certification and merits discovery. *Cf. Luna v. Universal City Studios, LLC¸* No. 12-9286, 2015 WL 13655668, at *3 (C.D. Cal. Feb. 10, 2015) ("[B]ecause certification issues often cannot be meaningfully developed without inquiry into basic issues of the litigation, class certification discovery is closely enmeshed with merits discovery." (internal quotation marks and citation omitted)).

While phasing could dispose of the case expeditiously, it could just as easily invite piecemeal and duplicative motion practice. *See, e.g., Kennis v. Metropolitan West Asset Mgmt., LLC*, No. 15-8162, 2016 WL 11507034 (C.D. Cal. Sept. 8, 2016) (motion practice over scope of first phase discovery in securities litigation); *see also Kelly v. Provident Life & Acc. Ins. Co.*, No. 04-807, 2011 WL 2448276, at *3–4 (S.D. Cal. June 20, 2011) (dispute over whether plaintiff waived right to take discovery in later phase by failing to take it in earlier phase). Likewise, it is not difficult to foresee disputes over the proposed scope of any phase-one motion for summary judgment.

At hearing, Wells Fargo argued if the court was inclined to allow discovery beyond the limitations period, the court should allow a "look-back" akin to what is available in Title VII continuing violations cases. Such Title VII continuing violations cases have often settled on approximately five years prior to the beginning of the limitations period. *See, e.g., Miller v. Hygrade Food Prods.*, 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000) (collecting cases). In the alternative, Wells Fargo asserts the look-back should go no further than 2009, when it asserts its lending practices changed in response to the 2008 financial crisis. As plaintiff's counsel pointed out at hearing, however, no evidence in the record at this time supports this bare assertion. The court in *Miller* and similar cases engaged in the discovery balancing test of weighing relevance against the burden of furnishing the information. *Id.* ("In setting time limits, courts generally consider relevancy and the burdensomeness of furnishing the information requested by the plaintiff.") (citation omitted). Moreover, it remains Wells Fargo's burden to show that harm or prejudice will result from the discovery plaintiff seeks. *Matsushita*, 2007 WL 219779, at *2; *cf. Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (citing *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002)) (moving party has burden to demonstrate harm or prejudice from disclosure to obtain protective order). Here, Wells Fargo offers only the unsubstantiated claim that its practices changed in 2009 as support for limiting first-phase discovery to 2009 and later. This is not sufficient to meet Wells Fargo's burden.

//////

IV. CONCLUSION

For all the foregoing reasons, the court DENIES defendants' motion to phase discovery. The parties agreed to defer a scheduling conference until the resolution of this motion. Joint Status Report, ECF No. 50 at 11. The court now ORDERS the parties to meet and confer to file a new Joint Status Report with a proposed schedule on which the case may now proceed. The parties shall file the Joint Statement no later than twenty-one (21) days after the filing of this order. This order resolves ECF No. 52.

IT IS SO ORDERED

DATED:  October 8, 2020.

CHIEF UNITED STATES DISTRICT JUDGE